## Mitchell et al., Admrs., Appellants, v. Dunn, Admrx.

Argued March 23, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Maurice P. Breene,* with him *Donald Glenn,* for appellants.

*G. G. Martin,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1933:

The administrators of S. L. Mitchell brought an action against the Exchange Bank & Trust Company of Franklin, to recover the amount of a savings account. The administratrix of Emma E. Mitchell, wife of S. L. Mitchell, who had survived him, claimed the same fund. An interpleader brought in as a party the Emma E. Mitchell Estate, whereupon the bank paid into court the amount of the deposit, with interest thereon. The jury returned a verdict for plaintiffs, the administrators of S. L. Mitchell, which the court set aside granting the motion for judgment n. o. v. by defendant. The administrators of S. L. Mitchell appeal.

In granting the motion for judgment, the court below held: The prima facie case of appellants was overcome by appellee's evidence; notwithstanding the fact that this evidence was all oral, it was of such quantity

and quality that the presumption of ownership raised by the deposit book gave way to testimony which was not impeached on cross-examination or otherwise; therefore judgment should be given for appellee though the jury found otherwise.

The case before us presents a clear conflict of testimony. It is an admitted fact that the deceased, S. L. Mitchell, opened a savings account in his individual name on November 20, 1906, and at that time the bank issued to him a savings deposit book, No. 1550, which he retained until his death. The book was offered in evidence by appellants, and it contained all the entries by the bank of all deposits and withdrawals made by S. L. Mitchell from November 20, 1906, until his death, February 23, 1928. It was found among his effects after his death. The deposit book showed on its front cover and its first page that the account was opened in the name of S. L. Mitchell, and it was signed at the end by him.

The "Rules and Regulations" of the bank as printed in the pass book, item numbered ten, states: "Money deposited will be entered upon the books of the bank, and also in a book to be given the depositor. This book will be evidence of the property, and the depositor will be bound by the rules and regulations on receiving the book in which the same are printed."

Appellee introduced the extremely indefinite testimony of Mrs. Cooper, a bank clerk, to the effect that it was "her best recollection" that Mr. Mitchell authorized her in 1911 or thereabouts, to change the individual account from his name into a joint account in his and his wife's name. One deposit slip only, although a large number of deposits had been made, was offered in evidence. It was dated January 3, 1911, made out in the handwriting of Mrs. Cooper, the bank clerk, to the joint account of "Mr. and Mrs. Mitchell." Oral testimony showed that the bank had no signature card of Mrs. Mitchell, though it had of other depositors. No with-

drawal checks were offered in evidence. Oral testimony was introduced by appellee that on the back cover of the pass book, which was torn off and missing, there had been placed, apparently only a short time before Mr. Mitchell's death, a rubber stamp form changing the account from the name of S. L. Mitchell into the joint names of S. L. Mitchell and Emma E. Mitchell, but the signature of Emma E. Mitchell was not proved. Ledger sheets, showing the account stood under the heading, "Mr. and Mrs. S. L. Mitchell," were introduced in evidence, but there was evidence showing that many employees of the bank had access to this book, that it was possible for any of them to have changed the heading of the account, that Mrs. Cooper, in fact, inserted "Mr. and Mrs." before the name of S. L. Mitchell sometime before 1912, but no certain testimony showing the authority for this change was introduced. This, in substance, is the case upon which the action of jury and court, above indicated, was predicated.

In support of the verdict we must assume the truth of plaintiffs' evidence, and every inference fairly deducible therefrom: Grimes v. Penna. R. R. Co., 289 Pa. 320; Pfeffer v. Johnstown, 287 Pa. 370; Murphy v. Phila. R. T. Co., 285 Pa. 399; Derrick v. Harwood Electric Co., 268 Pa. 136. Appellants, by their evidence, created a prima facie case, which appellee, in order to prevail, necessarily had to explain or overcome. The inference arose from appellants' evidence that the account at the death of S. L. Mitchell remained his sole and individual account. This inference when explained and combated by testimony of appellee presents a real conflict of testimony. The effect and credibility of, and inferences to be drawn from, all of the evidence is for the determination of the jury because appellee's evidence is not clear and positive, convincing and indisputable; there are inconsistencies and contradictions within it which necessarily required the consideration of the jury.

The case on the testimony appearing in the record certainly is not one permitting the court to direct a verdict or enter judgment n. o. v.

The judgment is reversed, and the lower court is directed to enter judgment on the verdict for appellants, costs to be paid by appellee.