Lawrence J. SABO, Administrator of the Estate of James Scott, Jr., Deceased, Appellant,

v.

READING COMPANY,

(Bethayres Concrete Products Company, Inc.)

No. 12075.

United States Court of Appeals Third Circuit.

Argued Feb. 21, 1957.

Decided May 15, 1957.

Walter E. Alessandroni, Philadelphia, Pa., for appellant.

William C. Schultz, Jr., Philadelphia, Pa. (Richard P. Brown, Jr., Henry R. Heebner, Philadelphia, Pa., on the brief), for appellee, Reading Co.

Morgan, Lewis & Bockius, Philadelphia, Pa. (Thomas E. Byrne, Jr., Philadelphia, Pa., on the brief. Krusen, Evans & Shaw, Philadelphia, Pa., of counsel), for appellee, Bethayres Concrete Products Co., Inc.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Appellant's decedent, James Scott, Jr., was killed by a rapidly moving passenger train of the Reading Company at 8 o'clock on the foggy morning of January 20, 1954. This is an appeal from the judgment of the district court, sitting without a jury, in favor of defendant. The court concluded that decedent was contributorily negligent and the Reading Company free from wanton or willful misconduct. Jurisdiction is based upon diversity of citizenship, and we must apply the law of Pennsylvania.

The findings of fact of the district court were amply supported by the record. They disclose that the decedent on the date of the accident was employed by Bethayres Concrete Products Company, Inc., the additional defendant here. It was his duty to thaw frozen cinders so that they might be unloaded from freight cars on a siding owned by the Reading Company, adjacent to premises leased by that company to decedent's employer. The siding was located just north of the parallel west-bound main track of the Reading Company, so that there was a distance of 11 feet 2½ inches between the south rail of the siding and the north rail of the main track. The overhang of a freight car on the siding and the overhang of a passenger train on the main track reduce this distance to a net clearance of 5 feet 9¾ inches.

The morning of January 20, 1954, was extremely foggy. On that day, Scott was carrying a bucket of fuel from a storage area located north and west of the scene of the accident in order to place it under the freight car standing on the siding. Visibility was found to be about seven feet; the rails on the main track, however, were visible. Scott had been working in the general area for three days and was aware of the location of the main track and that speeding trains created danger there. James Jones, a fellow-worker, was walking ahead of Scott and to his left. When they had advanced with the fuel buckets to a point alongside a freight car on the siding, defendant's passenger train sped out of the fog at sixty miles an hour. Jones testified that he had to leap aside to avoid being hit. Scott, walking behind him to the right, was struck by the train and killed.

■■ The status of Scott at the time of the accident is the salient factor in determining the degree of diligence required of the railroad. The freight cars Scott was to thaw were standing on the siding owned by defendant railroad. A building to the north of the siding con-

stricted the work area there, so that it was easier and more practicable for Scott to pursue his duties in the area to the south of the siding. In the space in which it was necessary for him to work, we agree with the district court that he was a business invitee. His implied invitation was not dissimilar to that found by Pennsylvania appellate courts in Muth v. Pennsylvania R. Co., 1930, 100 Pa. Super. 63, and Boggess v. Baltimore & Ohio R. Co., 1912, 234 Pa. 379, 83 A. 356. Scott's work in preparing the cars for unloading was directly or indirectly connected with business between his employer and the railroad. Restatement, Torts § 332 (1934). We conclude that Scott was a business invitee in the area in which it was necessary for him to be while he performed his duties. However, the district court made a finding of fact that in doing this work "It was not necessary for the men to go upon the main track or so close to it that they would be struck by trains." The record supports this finding. Thus, if it were not necessary for Scott to be in the overhang area of the main track, when he did walk within that space he became a trespasser. "One who is invited or permitted to enter a particular part of the land * * * becomes a trespasser if he enters another part of the land * *." Restatement, Torts § 341, Comment b, cited with approval in Dumanski v. City of Erie, 1943, 348 Pa. 505, 34 A.2d 508, 509.

■■■ The degree of negligence which will impose liability upon the railroad for injury to a trespasser is described by the Pennsylvania courts as "willful or wanton negligence." Reagan v. Reading Co., 1937, 126 Pa.Super. 175, 190 A. 412, 413–414; Noonan v. Pennsylvania R. Co., 1937, 128 Pa.Super. 497, 194 A. 212, 215. To justify recovery, it must appear that the engineer actually discovered the presence of the trespasser, and thereafter failed to exercise due care to avoid striking him. It is not enough that the engineer simply failed to keep a lookout for the trespasser. Restatement, Torts § 336, Illustration 4; Peden

v. Baltimore & Ohio R. Co., 1936, 324 Pa. 444, 188 A. 586, 587.

■■ Appellant urgently presses upon us the contention that the railroad's conduct in speeding blindly through the fog was wanton and willful. He cites no cases to support this, and our research discloses none. The contention ignores two basic principles of Pennsylvania law. First, speed itself is not evidence even of ordinary negligence. Ealy v. New York Central R. Co., 1939, 333 Pa. 471, 5 A.2d 110, 112. Secondly, on its own tracks, a railroad has the paramount right of way and is entitled to presume, and to act upon the presumption, that there will be no trespassers on the tracks. Falchetti v. Pennsylvania R. Co., 1932, 307 Pa. 203, 160 A. 859. To hold otherwise would defeat the social and economic utility of railroads. In the present case, the train would have had to be traveling about ten miles an hour to stop within the distance of visibility, thus completely defeating its purpose as a transportation medium.

■ The engineer of defendant's train saw appellant's decedent after it was too late to stop. Wanton or willful negligence can be predicated only upon a finding that the railroad failed to exercise due care after the presence of the trespasser was discovered. This record discloses no such negligence, and the district court properly so found.

The district court found also that appellant's decedent was contributorily negligent as a matter of fact. Although not necessary to this opinion, the court could have found that Scott, as a trespasser on the part of the tracks where his work did not require him to be, was contributorily negligent as a matter of law. Bailey v. Lehigh Valley R. Co., 1908, 220 Pa. 516, 69 A. 998, 999; Buxton v. Baltimore & Ohio R. Co., 1923, 81 Pa.Super. 490. The testimony of decedent's fellow worker, Jones, given on behalf of plaintiff, indicated that decedent Scott was walking within the overhang area of the main track. This dissipated decedent's presumption of due care and rendered a nonsuit appropriate by Penn-

sylvania law. Conley v. Mervis, 1936, 324 Pa. 577, 188 A. 350, 355, 108 A.L.R. 160.

The judgment of the district court will be affirmed.